FERNANDO GALLARDO DÍAZ, Plaintiff and Appellant, *v.* CAMELIA RODRÍGUEZ FUERTES, Defendant and Appellee.

No. 5538. Argued December 3, 1931.—Decided December 16, 1931.

*F. Gallardo Díaz, in pro per.*, for appellant. *Leopoldo Feliú* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Fernando Gallardo García brought, in the District Court of Humacao, a divorce action against his wife, Camelia Rodríguez Fuertes, in which a judgment was rendered in his favor on April 11, 1930, wholly dissolving the bonds of matrimony theretofore existing between the spouses.

On the 24th of the following September Camelia Rodríguez Fuertes filed, through her attorneys, a verified motion entitled "to set aside the default, to vacate the judgment, to relieve the defendant from the latter, and to grant her leave to file an answer and a cross-complaint."

In that motion she alleged, in short, that after she had been summoned in the action for divorce, she filed a demurrer which was overruled with leave to answer; that it had always been her intention to answer, as it was her husband, not she, who had been guilty of cruelty and desertion, and that when she was ready to do so, the plaintiff, for the purpose of inducing her not to defend the action, promised her that if she did not oppose the complaint she would be given the custody and care of their children until the latter became of age, and in addition the plaintiff would withdraw from his complaint the charge of cruel treatment, and that the defendant consented; that on June 14th, 1930, the plaintiff filed a motion praying that the children be delivered to him, and "that the action of the plaintiff had for its only purpose to deceive this defendant and to defraud her, as in fact she

was deceived and defrauded, of her right to defend this action of divorce.''

There was attached to the first-named motion an answer denying the allegations of the complaint and a cross-complaint in which the defendant prayed for a divorce on the ground of cruelty and desertion on the part of her husband; and also an affidavit of her attorney, Leopoldo Feliú, Esq. It would seem advisable to transcribe herein the seventh and eighth paragraphs of this affidavit. They read as follows:

"VII.—That after the demurrer had been filed and overruled and when this affiant was ready and about to file said answer and cross-complaint, conferences took place in which the plaintiff was advised by this affiant of the purpose of his aforesaid client; that conferences also took place between this attorney, the defendant, and her relatives; that the defendant insisted in her purpose to have the matter settled as soon as possible in order to put an end to the situation existing between her and the plaintiff, as the latter was going to sail soon; and that in the said conferences with her and her relatives the affiant was authorized by the defendant to inform the plaintiff that, if he amended his complaint alleging desertion as his only ground and consented and promised to leave the two girls under the care and custody of the defendant until they became of age, and it were so provided in the judgment to be rendered, then the defendant would not contest the action of divorce, and would not appear, and upon the rendition of a judgment by default she would waive her right of appeal so that the judgment might become final (*firme*) and enforceable forthwith.

"VIII.—That in a conference had with the plaintiff regarding the above facts and proposal, said plaintiff promised the affiant herein, as the attorney and representative of the defendant, to accept the aforesaid proposal in all its particulars and, in pursuance thereof, he filed in this court the amended complaint dated March 14, 1930, and the plaintiff was advised on behalf of the defendant that she would refrain from answering the said complaint and would suffer a judgment by default to be entered only for the purpose of putting a speedy end to the litigation and of her having alone the custody and care of the girls in the manner stated, to which the plaintiff agreed; that, accordingly, the defendant did not file any answer or plea, her default was entered, and thereupon a judgment was rendered against the defendant, who did not appear

in person at the hearing, but affiant, as her attorney and agent acting upon her instructions, was present for the sole purpose of listening to the evidence heard and to see to it that the agreement as to the custody and care of the children was made to appear of record, which was done by both the plaintiff and the affiant, without the latter taking any part, or announcing, or making it known in any way or by any means, that he had appeared at such hearing in the name and behalf of the defendant or as her attorney, save for the purpose already mentioned.''

The plaintiff filed a verified answer to the motion. Briefly, he denied having induced the defendant not to defend the action or that he had treated her cruelly and had deserted her, and asserted that the only thing he did was to strike out from the complaint the allegation of cruelty and to pray that his daughters might remain in the custody of the defendant without prejudice to his rights regarding the *patria potestas* over them. Said answer concluded thus:

"That about six months ago this Hon. Court rendered a judgment in the present case, notice of which was served on the defendant, who waived her right of appeal, and therefore said judgment became final and enforceable; that the said judgment was not rendered against the defendant by mistake, inadvertence, surprise, or excusable neglect, as the defendant was represented at the trial, listened to the evidence, had an opportunity to defend the action, voluntarily waived her right of appeal, was always notified of all the proceedings had in this case, was advised of the legal consequences of the said judgment, and did not complain thereof until the plaintiff has sought to exercise the rights which the law grants to him over his daughters.

"As the judgment rendered by the court in the present case is final and enforceable, and as the defendant has waived her right of appeal, this court is at present without jurisdiction to proceed in the action.

"After the judgment rendered by this court decreeing the dissolution of the marriage of the litigants had become final and enforceable and been recorded in the proper Civil Registry, the undersigned contracted a second marriage with a woman, other than the defendant, and for this reason the court could not even consider any question relating to the setting aside of the judgment rendered in this case."

894

There was attached to the foregoing answer an affidavit of the plaintiff containing a recital of the facts which occurred.

The district court took the case under advisement, and on November 1, 1930, it rendered a decision wherein it set forth the facts giving rise to the suit, the law and the jurisprudence which it deemed applicable, and finally said:

"It appearing that in this case there exists excusable error, mistake, and neglect on the part of the defendant, who sets up in her motion sufficient grounds of justification and who in her proposed cross-complaint raises questions which *prima facie* deserve to be considered on their merits, the court is of the opinion that it must exercise the discretion granted to it by section 140 of the Code of Civil Procedure and ought to render, as it does hereby render, a decision sustaining the motion filed by the defendant on September 26 of the current year; therefore, it is ordered that the default of the defendant, entered on March 31 of the current year, be and the same is hereby set aside; that the judgment rendered by this court cn April 11 of the same year is also set aside, and let the proposed answer and cross-complaint already filed herein stand as the answer and cross-complaint of the defendant to the amended complaint, which appears to have been filed on March 14 of the present year; and that the plaintiff have leave to answer or otherwise plead to the cross-complaint within twenty days from the date hereof."

Thereupon the plaintiff took an appeal to this Court. He maintains that the district court abused its discretion in opening the alleged default and vacating the judgment, and he discusses this objection under the following heads:

"A. In this case, it should not be considered that the judgment was rendered by default;

"B. In this case, there was no mistake, inadvertence, surprise, or excusable neglect;

"C. In this case, the motion seeking the annulment of the judgment of divorce fails to state sufficient facts and is fatally defective;

"D. In this case, the defendant is guilty of laches;

"E. In this case, there was no fraud;

"F. In this case, there was no collusion to create a cause of action;

"G. In this case, even admitting the falsity of the testimony relied on by the court for granting the divorce, such a circumstance does not render the judgment void;

"H. In this case, the defendant is estopped to attack the judgment of divorce;

"I. In this case, as the plaintiff had re-married, the court ought not to have set aside the judgment of divorce;

"J. In this case, the jurisprudence invoked by the trial court for vacating the judgment of divorce is not applicable."

Each of these points is carefully argued, and the facts and the law pertaining thereto are set forth.

We will not make a detailed analysis of all the subdivisions. We have examined the record and the briefs. The oral arguments contributed greatly to our forming a clear opinion of the case, and we are fully convinced that the appellant is right.

The defendant was duly apprised of every step in the proceeding and had at all times the assistance of able counsel. There was no true judgment by default. She filed demurrers and appeared at the trial through her attorney and expressly waived her right to appeal from the judgment. How can it be said here that there was inadvertence, surprise, or excusable neglect?

The only thing that gives a semblance of justification to the case of the defendant is the prohibition contained in section 165 of the Civil Code, to wit: "A divorce can not be granted when the ground upon which it is sought be the consequence of an agreement. . ."

We say a semblance of justification, because although in the case before us there was an understanding, it appears that such understanding was not for the purpose of creating a ground on which to base the complaint.

The plaintiff acted openly. He alleged two causes of action. His wife was summoned and appeared by her attorney and filed demurrers which were overruled. The plaintiff then, not on his own initiative, but at the instance of

the defendant, as shown by the affidavit of her attorney, consented to withdraw one of the causes alleged: the one which would have required him to prove cruelty. The plaintiff stood firmly on his alleged ground of desertion. It appears from an examination of the record that the judgment was rendered after the giving of testimony by witnesses who testified under oath before the court in regard to the desertion; which evidence was considered by the court as sufficient to justify the jugment rendered.

The question relating to the children, when examined on its merits, becomes a further argument against the defendant. The little girls were living with their mother. Differences had already arisen during the litigation because of the desire of the father to see them from time to time. The mother insisted upon keeping them with her. She could not plead ignorance of the law. The judgment of divorce sought by the father implied the loss of the mother's right to their custody. The father never renounced the *patria potestas* under the agreement. Only a mere temporary concession was involved, for which provision was made in the judgment, thus:

"And the court, on motion of the plaintiff himself, further directs that the girls born of the marriage between the plaintiff and the defendant and named Carmen Leticia and Camelia Monserrate, by reason of their tender age, may continue living with the defendant, without prejudice, of course, to the rights of *patria potestas* granted by law to the plaintiff, . . ."

That judgment was rendered in open court in the presence of counsel for the defendant; and after it had been entered in the judgment book it was expressly consented to by the defendant. If the defendant was really the innocent party, how is it possible that she should consent to lose the *patria potestas* and be satisfied with the bare pronouncement contained in the judgment?

The acts of the defendant import her acquiescence in the amended complaint and imply an acknowledgment on her

part of the truth of the charge of desertion, as to which evidence was adduced at the trial and which formed the basis of the judgment decreeing the divorce. The agreement, therefore, was not one of the kind forbidden by section 165 of the Civil Code. See the decisions of this Court in *Loaiza* v. *Caballero,* 6 P.R.R. 55, and *Ortiz* v. *Rodríguez,* 4 P.R.R. 51.

Moreover, the only reason which might have furnished the defendant with some degree of justification for proceeding— the motion of the plaintiff seeking to be awarded the custody of the girls—had ceased to exist when the judge took the case under advisement. It appears from the record that the plaintiff withdrew his motion. Besides, a violation by the plaintiff of the agreement regarding the custody of the girls, would have been ground for the court to intervene and fix the rights of the parties therein, but not to annul the judgment.

If, in addition to all the foregoing, it is considered that the plaintiff had already remarried and had thus formed a new home, the conclusion is unavoidable that the district court committed the abuse of discretion which has been assigned as error. Therefore, the appeal must be sustained and the order appealed from reversed.

Mr. Justice Hutchison concurs in the judgment but not in all the grounds set forth in the opinion.